ROCKFORD MEMORIAL HOSPITAL, Plaintiff-Appellee, v. THE DEPARTMENT OF HUMAN RIGHTS, Defendant-Appellant (A.L. Rao, Intervenor).

Second District   No. 2—94—0812

Opinion filed May 31, 1995.

James E. Ryan, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of counsel), for appellant.

Edward R. Telling III, Stephen E. Balogh, and Timothy J. Rollins, all of Williams & McCarthy, P.C., of Rockford, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, the Department of Human Rights, appeals an order of the circuit court enjoining it from taking any action to investigate a charge of discrimination filed by Dr. A. Lakshmana Rao against plaintiff, Rockford Memorial Hospital. We reverse and remand.

The following is a brief summary of the facts. On November 22, 1993, Dr. A. Lakshmana Rao (Rao) filed a charge with the Department of Human Rights (Department) alleging that Rockford Memorial Hospital (Rockford) discriminated against him on the basis of his national origin, race, and religion, in violation of the Illinois Human

Rights Act (Human Rights Act) (775 ILCS 5/1—101 *et seq.* (West 1992)). The basis of Rao's allegation of discrimination was a decision by a Rockford Memorial Hospital credentials committee, a body composed of physicians on Rockford's medical staff, to restrict his hospital staff privileges. The parties characterize the proceedings of Rockford's credentials committee as "peer review proceedings." Peer review is the method by which many hospitals determine medical staff status and address issues relating to the quality of patient care.

On January 7, 1994, Rockford filed a verified two-count complaint and motion for a preliminary injunction in the circuit court of Winnebago County seeking (1) a declaration that the Department lacked the jurisdictional authority to investigate Rao's charge of discrimination; and (2) an order enjoining the Department from investigating the charge. The complaint alleged, *inter alia*, that Rao had staff privileges at Rockford but was not an employee and that the decision to curtail Rao's staff privileges resulted from peer review proceedings conducted pursuant to Rockford's bylaws and its written policy on medical staff appointment.

In support of the complaint and motion for a preliminary injunction, Rockford filed a memorandum of law. In the memorandum, it argued that the Department should be precluded from investigating Rao's charge because section 10.2 of the Hospital Licensing Act (210 ILCS 85/10.2 (West 1992)) grants hospitals such as Rockford absolute immunity from civil liability for decisions made by credentials committees and other peer review committees. The memorandum further argued that the Department had no authority to investigate the charge because Rao was not an employee within the meaning of the Human Rights Act.

On January 24, 1994, Rockford filed a motion for summary judgment on both counts of its complaint, adopting its previously filed memorandum of law. (See 735 ILCS 5/2—1005 (West 1992).) On January 28, 1994, the Department filed a motion to dismiss Rockford's complaint pursuant to section 2—619 of the Code of Civil Procedure. (735 ILCS 5/2—619 (West 1992).) In its motion to dismiss, the Department argued that the circuit court lacked jurisdiction over the complaint because the Department had not yet made its own initial determination of whether it had jurisdiction over Rao's charge. The Department further argued that Rockford was required to exhaust its administrative remedies before it could bring an action in the circuit court. On March 1, 1994, the circuit court denied the Department's section 2—619 motion and asserted jurisdiction over Rockford's action. The Department filed its answer to Rockford's complaint on March 24, 1994.

On June 8, 1994, following a hearing, the circuit court granted summary judgment to Rockford and enjoined the Department from investigating Rao's charge of discrimination. The trial court's order granting summary judgment stated in pertinent part:

"1. The Illinois Supreme Court held in *Cardwell v. Rockford Memorial Hospital*, 136 Ill. 2d 271 (1990), that Section 10.2 of the Illinois Hospital Licensing Act, 210 ILCS 85/10.2, confers *absolute* immunity from civil damages as a result of acts, omissions, decisions or any other conduct of a credentials committee.

2. That there are no genuine issues of any material fact.

3. As a matter of law, the proceeding initiated by Dr. Rao with the Illinois Department of Human Rights cannot be maintained against Rockford Memorial Hospital or its credentials committee." (Emphasis added.)

The Department timely filed its notice of appeal on June 11, 1994.

On appeal, the Department argues that the trial court's decision to grant summary judgment to Rockford and enjoin the Department's investigation should be reversed because: (1) Rockford's claim against the Department is barred by sovereign immunity; (2) Rockford was required to exhaust its administrative remedies before proceeding in the circuit court; and (3) the trial court erred in finding that the Illinois Hospital Licensing Act (210 ILCS 85/10.2 (West 1992)) confers absolute immunity from discrimination claims arising from decisions made by peer review committees.

Summary judgment is proper where no genuine issue of material fact exists and the question before the court is solely a matter of law. (735 ILCS 5/2—1005 (West 1992); *Jacobson v. General Finance Corp.* (1992), 227 Ill. App. 3d 1089, 1093.) Our function in reviewing a grant of summary judgment is to determine whether the trial court correctly found that there were no genuine issues of material fact and, if there were not, whether the trial court correctly entered judgment as a matter of law. (*Village of Long Grove v. Austin Bank* (1994), 268 Ill. App. 3d 70, 73.) We review a summary judgment *de novo. Long Grove*, 268 Ill. App. 3d at 73; *Town of Avon v. Geary* (1991), 223 Ill. App. 3d 294, 299.

The Department's first contention is that Rockford's action is barred by sovereign immunity because the Department, as an arm of the State, is immune from suit in the circuit court. In response, Rockford concedes that most actions against the State must be brought in the Court of Claims. It maintains, however, that because it seeks a declaration that the Department has acted in excess of its statutory authority, its action was properly heard by the circuit court. Alternatively, Rockford argues that if we find its action is

barred by sovereign immunity, we should allow it to amend the pleadings under Supreme Court Rule 362. (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 362, eff. February 1, 1994.) Pursuant to this argument, Rockford has filed a motion to amend the pleadings, which we ordered taken under advisement with the case. Because we agree with Rockford's contention that this action is not barred by sovereign immunity, we need not address the motion to amend the pleadings.

Article XIII, section 4, of the Illinois Constitution states: "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." (Ill. Const. 1970, art. XIII, § 4.) Thus, the 1970 Constitution abolished sovereign immunity subject to the power of the General Assembly to reassert it. (See *Doe v. Burgos* (1994), 265 Ill. App. 3d 789, 791.) Shortly after adoption of the 1970 Constitution, the General Assembly exercised the right given it by article XIII, section 4, and enacted the State Lawsuit Immunity Act. (See 745 ILCS 5/1 (West 1992); *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 186-87.) Under the State Lawsuit Immunity Act, the doctrine of sovereign immunity applies to all suits against the State except where the State has expressly consented to be sued or where the suit is brought under the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 1992)). (See 745 ILCS 5/1 (West 1992); *Management Association of Illinois, Inc. v. Board of Regents of Northern Illinois University* (1993), 248 Ill. App. 3d 599, 606.) Under the Court of Claims Act, the Court of Claims has exclusive jurisdiction to hear and determine:

> "All claims against the state founded upon any law of the State of Illinois, or upon any regulation thereunder by an executive or administrative officer or agency, other than claims arising under the Workers' Compensation Act or the Workers' Occupational Diseases Act, or claims for expenses in civil litigation." 705 ILCS 505/8(a) (West 1992).

Courts interpreting this section have held that, where a plaintiff is not seeking to enforce a present claim against the State and seeks only prospective injunctive relief, such a suit is not a "claim against the State" barred by sovereign immunity and may be pursued in the circuit court. This "prospective injunctive relief exception" is often invoked where a plaintiff seeks to enjoin a State agency or official from taking actions in excess of his statutory or constitutional authority. (See *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 552; *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 548; *Magna Trust Co. v. Department of Transportation* (1992), 234 Ill. App. 3d 1068, 1070.) Rockford argues that this exception to the doctrine of sovereign immunity should apply because its action

does not seek to enforce a present claim against the State as contemplated by the Court of Claims Act. Instead, according to Rockford, it seeks only what the plaintiffs in the above-cited cases sought: to enjoin the Department from taking action in excess of its statutory authority. Rockford reasons that because its action cannot subject the State to liability and seeks only declaratory and prospective injunctive relief, it was properly filed in the circuit court and is not barred by sovereign immunity.

In support of its argument, Rockford directs our attention to the supreme court's opinion in *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541. There, the plaintiff filed a complaint against the Pollution Control Board (Board) seeking a declaration that one of the Board's rules was unauthorized by statute and seeking an injunction to prevent the Board from enforcing the challenged rule. In addition to offering a variety of arguments directed against the merits of the plaintiff's claim, the Board contended, at oral argument, that the action against it was barred by sovereign immunity. The supreme court rejected this contention, stating: "Landfill is not seeking to enforce a present claim against the State, but, rather, seeks a declaration that the Board is taking actions in excess of its delegated authority. Such an action does not contravene principles of sovereign immunity." *Landfill*, 74 Ill. 2d at 552.

According to Rockford, *Landfill* should control the present case because the present action is intended only to prevent the Department from proceeding with the investigation of a charge of discrimination which it has no statutory power to investigate and is therefore analogous to the action at issue in *Landfill*. In response, the Department argues that regardless of what relief is sought, an agency of the State is never an appropriate defendant in a circuit court action. The Department maintains that where courts have recognized the "prospective injunctive relief exception" to the sovereign immunity doctrine, they have required the plaintiffs to name as a defendant an official or officer of the State agency in question rather than the agency itself. Thus, the Department states, Rockford has sued the wrong party and sovereign immunity bars this action regardless of the relief sought.

The Department is correct in noting that, generally, an agency of the State may not be a defendant in a circuit court action. This is because State agencies are considered to be arms of the State itself, which is immune from suit in the circuit court. (See *Ellis v. Board of Governors of State Colleges & Universities* (1984), 102 Ill. 2d 387, 393; *Children's Memorial Hospital v. Mueller* (1986), 141 Ill. App. 3d 951, 955.) However, the rule is not absolute: "[t]he determination that a

claim is one against the State does not depend upon the State agency being named as a party. [Citation.] The determination depends instead on the issues involved and the relief sought." (*Management Association*, 248 Ill. App. 3d at 607, citing *Healy v. Vaupel* (1990), 133 Ill. 2d 295, 308; see also *Hickey v. Huber* (1994), 263 Ill. App. 3d 560, 562; *Malmberg v. Smith* (1993), 241 Ill. App. 3d 428, 431.) Thus, the formal denomination of the parties in a lawsuit is not conclusive as to whether a suit is against the State. Rather, in determining whether sovereign immunity applies to a particular case, substance takes precedence over form. *Hudgens v. Dean* (1977), 53 Ill. App. 3d 126, 129.

In light of this authority, we reject the Department's contention that the applicability of sovereign immunity to the present case should be decided simply by looking to the named defendant in the lawsuit. Instead, we must examine the issues presented and the relief sought to determine whether Rockford's action is truly a claim against the State.

■ Our review of Rockford's complaint demonstrates that it does not seek to enforce a present claim against the State. Rather, it seeks a declaration that the Department is without statutory authority to investigate Rao's discrimination charge and an injunction to prevent its director from acting in excess of her authority. "An action which seeks to prevent a State official from *** taking action beyond his powers, is a suit against the State officer, not against the State itself." (*Board of Education of Township High School District No. 206 v. Cronin* (1979), 69 Ill. App. 3d 472, 474; see also *Landfill*, 74 Ill. 2d at 552.) As in *Landfill*, this action, though nominally against the Department, actually seeks to prevent a State official from acting outside her statutory authority and is, therefore, not barred by sovereign immunity.

The Department next argues that even if Rockford's action is not barred by sovereign immunity, the circuit court should have granted its motion to dismiss because Rockford failed to exhaust its administrative remedies. According to the Department, the exhaustion of remedies doctrine required Rockford to assert its challenge to the Department's jurisdiction while the case was under review by the Department itself, rather than proceeding directly to file an action in the circuit court. In response, Rockford invokes the exception to the exhaustion of remedies doctrine which applies where the plaintiff challenges an administrative agency's jurisdiction as a matter of law.

Under the exhaustion of remedies doctrine, parties aggrieved by the action of an administrative agency generally may not seek judicial review of the agency action without first pursuing all administrative remedies available. (*Castaneda v. Illinois Human*

*Rights Comm'n* (1989), 132 Ill. 2d 304, 308.) This doctrine allows the administrative agency to develop fully and consider the facts of the case before it; it allows the agency to utilize its expertise; and it allows the aggrieved party the opportunity to succeed before the agency, possibly avoiding the need for judicial review. (See *Castaneda*, 132 Ill. 2d at 308, citing 4 K. Davis, Administrative Law Treatise 415 (2d ed. 1983).) The doctrine also helps to protect agency processes from impairment by avoidable interruptions, promotes efficiency by allowing the agency to correct its own errors, and conserves judicial time by helping to avoid piecemeal appeals. *Castaneda*, 132 Ill. 2d at 308.

■ While courts generally require strict compliance with this doctrine, there are several recognized exceptions. An aggrieved party may seek judicial review without exhausting all administrative remedies where: (1) a statute, ordinance, or rule is attacked as unconstitutional on its face; (2) multiple administrative remedies exist and at least one is exhausted; (3) the agency cannot provide an adequate remedy or it is patently futile to seek relief before the agency; (4) no issues of fact are presented or agency expertise is not involved; (5) irreparable harm will result from another pursuit of administrative remedies; or (6) the agency's jurisdiction is attacked because it is not authorized by statute. *Castaneda*, 132 Ill. 2d at 309 (citing cases for each exception).

Rockford argues that exception (6) applies to the present case because its complaint presents a legal challenge to the Department's jurisdictional authority to investigate claims arising from hospital peer review decisions made pursuant to section 10.2 of the Hospital Licensing Act. Rockford further notes that because the issue of whether hospitals and their medical staffs are immune from suit for peer review decisions is purely a question of law, exception (4), set forth above, may also apply. In support of its arguments, Rockford directs our attention to *Office of the Lake County State's Attorney v. Illinois Human Rights Comm'n* (1990), 200 Ill. App. 3d 151.

In *Lake County*, a discharged Lake County assistant State's Attorney, Marian McElroy, filed a charge of discrimination with the Department of Human Rights alleging discrimination based on her sex and race. Initially, the State's Attorney filed with the Department a motion to dismiss McElroy's charge for lack of jurisdiction. The Department denied the motion to dismiss and, following its investigation, filed a complaint with the Human Rights Commission (Commission) alleging discrimination by the State's Attorney against McElroy. In response, the State's Attorney filed a complaint in the circuit court seeking an order of prohibition and declaratory judg-

ment against the Commission. The State's Attorney alleged that the Commission was without jurisdiction to hear or decide McElroy's complaint and prayed for an order of prohibition requiring the Commission to refrain from further proceedings in the case. In support of his request for an order of prohibition, the State's Attorney contended that McElroy, a former assistant State's Attorney, had not been an "employee" and that the State's Attorney was not an "employer" within the meaning of the Human Rights Act. *Lake County*, 200 Ill. App. 3d at 152-53.

The Commission filed a motion to dismiss the State's Attorney's complaint pursuant to section 2—619 of the Code of Civil Procedure. In granting the Commission's motion to dismiss, the trial court found that the Human Rights Act was the exclusive remedy for alleged human rights violations and that the State's Attorney was required to exhaust all administrative remedies before seeking judicial relief. *Lake County*, 200 Ill. App. 3d at 152-53.

The appellate court reversed. After noting the general rule and rationale of the exhaustion of remedies doctrine, the court stated that, where the authority of an administrative body is in question, a question of law, not of fact, is presented. The court stated that the determination of the scope of the agency's power and authority is a judicial function, not a question to be finally determined by the administrative agency itself. (*Lake County*, 200 Ill. App. 3d at 156.) The court further reasoned that the exhaustion of remedies doctrine should not preclude a challenge to the jurisdiction of the administrative agency because such a determination involves no questions of fact which would implicate the agency's particular expertise. (*Lake County*, 200 Ill. App. 3d at 156.) The court concluded: "[t]he exhaustion of administrative remedies is not required where a party attacks an agency's assertion of jurisdiction 'on its face and in its entirety on the ground that it is not authorized by statute.'" (*Lake County*, 200 Ill. App. 3d at 156, quoting *Landfill*, 74 Ill. 2d at 551.) Turning to the facts before it, the court held that the issue raised in the State's Attorney's complaint concerning McElroy's status as an employee and his status as an employer constituted an attack on the Commission's jurisdiction sufficient to avoid application of the exhaustion of remedies doctrine. *Lake County*, 200 Ill. App. 3d at 156.

■ We agree with Rockford's contention that the exception to the exhaustion of remedies doctrine set forth in *Lake County* is applicable to the present case. As was the case there, the present action is a challenge to the jurisdiction of an administrative agency over a certain class of cases. In *Lake County*, the State's Attorney challenged the Human Rights Commission's jurisdiction over discrimina-

tion claims by assistant State's Attorneys; here, Rockford challenges the jurisdiction of the Department of Human Rights to investigate and pursue claims by physicians against hospitals based on decisions made by peer review committees. In both cases the agency's jurisdiction is challenged " 'on its face and in its entirety on the ground that it is not authorized by statute.' " (*County of Kane v. Carlson* (1986), 140 Ill. App. 3d 814, 816, *aff'd* (1987), 116 Ill. 2d 186, quoting *Cable Television Co. v. Illinois Commerce Comm'n* (1980), 82 Ill. App. 3d 814, 817.) In neither case is the challenge to the agency's jurisdiction limited to the unique set of facts presented. (*Cf. Inland Steel Mortgage Acceptance Corp. v. Carlson* (1987), 154 Ill. App. 3d 890, 896-97 (where plaintiff objects to agency's jurisdiction only as applied to his particular case, jurisdictional challenge exception to exhaustion of remedies doctrine does not apply).) Additionally, we note that the fourth exception to the exhaustion of remedies doctrine set forth in *Castaneda* applies because the questions presented by Rockford's action are entirely legal and do not require fact finding by the administrative agency or an application of its particular expertise. (See *County of Kane*, 116 Ill. 2d at 199.) Accordingly, we follow *Lake County* and hold that Rockford was not required to exhaust its administrative remedies before filing its action in the circuit court.

The Department's final contention is that the trial court erred in granting summary judgment to Rockford because section 10.2 of the Hospital Licensing Act does not immunize Rockford from claims brought pursuant to the Human Rights Act (775 ILCS 5/1—101 *et seq.* (West 1992)). In response, Rockford contends that, based upon the plain language of section 10.2 and the cases which have construed it, decisions of hospital peer review committees are absolutely immune from legal challenge.

In granting summary judgment, the trial court relied upon *Cardwell v. Rockford Memorial Hospital* (1990), 136 Ill. 2d 271, which, according to the trial court, stands for the proposition that section 10.2 of the Hospital Act confers absolute immunity from any liability resulting from the acts, omissions, or decisions of a hospital peer review committee. Section 10.2 provides in pertinent part:

"Because the candid and conscientious evaluation of clinical practices is essential to the provision of adequate hospital care, it is the policy of this State to encourage peer review by health care providers. Therefore, no hospital and no individual who is a member, agent, or employee of a hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of the acts, omissions, decisions, or any other conduct of a *** peer review committee, or any

other committee whose purpose, directly or indirectly, is internal quality control ***." 210 ILCS 85/10.2 (West 1992).

Courts construing the above section have held that it provides broad immunity from common-law actions for damages premised upon actions of peer review committees. (See, *e.g.*, *Cardwell v. Rockford Memorial Hospital Association* (1989), 183 Ill. App. 3d 1072, 1077-78 (*Cardwell I*), *aff'd* (1990), 136 Ill. 2d 271 (*Cardwell II*); *Knapp v. Palos Community Hospital* (1988), 176 Ill. App. 3d 1012, 1024; see also *Levy v. McKiel* (1989), 185 Ill. App. 3d 240, 244 (McLaren, J., dissenting) (stating that by providing immunity from civil damages, the only remedy known to common-law causes of action, section 10.2 effectively abrogates the right to sue for such claims in cases where it applies).) As the appellate court stated in *Cardwell I*, section 10.2 " 'operate[s] to grant immunity to physicians, hospitals and their staffs from civil liability for service upon peer review or other credential committees.' " *Cardwell*, 183 Ill. App. 3d at 1077, quoting *Barrows v. Northwestern Memorial Hospital* (1988), 123 Ill. 2d 49, 58.

The supreme and appellate courts' interpretation of section 10.2 in *Cardwell* is consistent with a long line of cases beginning with *Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, which holds that "decisions of private hospitals respecting the termination or curtailment of existing privileges of physicians on their medical staffs are subject only to a limited judicial review whose purpose is merely to determine whether such decisions were rendered in compliance with the bylaws of the institution." (*Knapp*, 176 Ill. App. 3d at 1018-19 (collecting cases).) However, the immunity accorded to the decisions of hospital peer review committees is not absolute. Courts have recognized that the immunity from "civil damages" conferred by section 10.2 does not foreclose the possibility of other remedies. In *Rodriguez-Erdman v. Ravenswood Hospital Medical Center* (1987), 163 Ill. App. 3d 464, the court stated:

"Section 10.2 merely precludes recovery of civil damages as a remedy in cases arising out of the acts and decisions of hospitals and individuals in internal review situations. It does not *** destroy all causes of action or take away a constitutionally protected, vested right." *Rodriguez-Erdman*, 163 Ill. App. 3d at 471.

Thus, section 10.2 is merely a restriction on the remedies available to physicians aggrieved by a hospital's peer review process. (See *Levy*, 185 Ill. App. 3d at 243.) It does not, as Rockford suggests, provide absolute immunity from all legal challenges to decisions made by hospital peer review committees. As the *Levy* court stated: "section 10.2 is remedial in nature and only affects one remedy for actions of hospitals and individuals in hospital internal review situa-

tions. Other remedies, such as injunctive and declaratory relief, remain available." *Levy*, 185 Ill. App. 3d at 243.

■ Thus, the trial court's conclusion in the present case that section 10.2 confers absolute immunity for decisions made by peer review committees is inconsistent with that section's plain language and with cases such as *Rodriguez-Erdman* and *Levy*. These cases recognize that, by its terms, section 10.2 precludes a physician from obtaining "civil damages" from a hospital or member of a peer review committee for decisions made in the peer review process. They further recognize that section 10.2 is silent as to the availability of other relief. Under the rule of *expressio unis est exclusio alterius*, the specific immunity from civil damages granted by section 10.2 implies that other remedies left unmentioned remain available. See *Villegas v. Board of Fire & Police Commissioners* (1994), 266 Ill. App. 3d 202, 211.

Accordingly, we recognize that section 10.2 may effectively abrogate the right of an aggrieved physician to sue based upon causes of action whose only possible remedy is money damages. (See *Levy*, 185 Ill. App. 3d at 244 (McLaren, J., dissenting).) However, where other possible remedies exist, as is the case under the Human Rights Act, section 10.2 does not affect a party's right to pursue them. (See 775 ILCS 5/8A—104 (West 1992) (setting forth remedies available under Human Rights Act, including cease and desist orders and reinstatement).) Thus, the trial court misinterpreted the grant of absolute immunity from "civil damages" provided in section 10.2 as a grant of absolute immunity from all legal liability. Neither the plain language of section 10.2 nor prior judicial interpretations support the trial court's view.

In addition to being inconsistent with section 10.2's plain language, the trial court's expansive view of the immunity created by section 10.2 is erroneous for another reason: it places that provision in conflict with article I, section 17, of the Illinois Constitution (Ill. Const. 1970, art. I, § 17) and the Human Rights Act (775 ILCS 5/1— 101 *et seq.* (West 1992)). Article I, section 17, of the Illinois Constitution provides in pertinent part:

> "All persons shall have the right to be free from discrimination on the basis of race, color, creed, national ancestry and sex in the hiring and promotion practices of any employer ***." (Ill. Const. 1970, art. I, § 17.)

Although there exists a conflict within the appellate court regarding the exact scope of section 17's protection against employment discrimination (compare *Thakkar v. Wilson Enterprises, Inc.* (1983), 120 Ill. App. 3d 878, with *Ritzheimer v. Insurance Counselors, Inc.*

(1988), 173 Ill. App. 3d 953, 957-59), it is clear that the policy embodied in section 17 is that the enumerated characteristics of race, creed, etc. should play no role in the treatment of employees by their employers. (See *Ritzheimer*, 173 Ill. App. 3d at 958-59.) The statutory scheme of the Human Rights Act was created to protect and enforce the protections of section 17. (*Thakkar*, 120 Ill. App. 3d at 881.) Thus, the anti-discrimination policy embodied in the Human Rights Act is constitutionally grounded. *O'Young v. Hobart Corp.* (N.D. Ill. 1983), 579 F. Supp. 418, 422-23; see also *Sanders v. A.J. Canfield Co.* (N.D. Ill. 1986), 635 F. Supp. 85.

Under the construction advocated by Rockford and adopted by the trial court, section 10.2 absolutely immunizes all decisions by hospital peer review committees from legal challenge. A logical corollary of the trial court's view is that peer review committees, the individuals who serve on them, and the hospitals that make use of them are immune from legal action under the Human Rights Act even if they engage in open, purposeful discrimination. If, as the trial court stated in relation to section 10.2, "[a]bsolute *** means absolute," a hospital peer review committee could overtly and lawfully decide to restrict a physician's staff privileges based solely on racial animus. Admittedly, this is an example of *reductio ad absurdum*; however, under the trial court's construction of section 10.2, such a decision would be absolutely immune from legal challenge.

A review of familiar principles of statutory construction leads us to reject the interpretation adopted by the trial court. In construing a statute, a court must ascertain and give effect to the legislature's intent in enacting the statute. (*Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund* (1993), 155 Ill. 2d 103, 110.) An interpretation of a statute which renders it constitutionally valid is preferred to one which renders it invalid. (*Collins*, 155 Ill. 2d at 110.) If a statute's construction is doubtful, courts construing it will resolve the doubts in favor of its validity. (*Bonaguro v. County Officers Electoral Board* (1994), 158 Ill. 2d 391, 397.) Further, any legislative action which is contrary to the Constitution is void. See *In re Tingle* (1977), 52 Ill. App. 3d 251, 256.

In light of the above-cited principles of statutory construction, we reject the trial court's view that section 10.2 clothes the decisions of hospital peer review committees with absolute immunity from legal challenge under all circumstances. Instead, we adopt the interpretation found in *Rodriguez-Erdman* and *Levy* and recognize that section 10.2 only confers immunity from civil damages, leaving other remedies, such as cease and desist orders and reinstatement, available

where authorized by statute or other law. Additionally, in keeping with our duty to construe statutes so as to affirm their constitutional validity where possible, we conclude that section 10.2 does not impliedly create an exception to the prohibition against unlawful discrimination found in article I, section 17, of the Constitution and the Human Rights Act. Therefore, the trial court erred in granting summary judgment to Rockford.

Accordingly, for the reasons stated above, we reverse the judgment of the circuit court of Winnebago County and remand this cause for further proceedings consistent with this opinion.

Reversed and remanded.

McLAREN, P.J., and COLWELL, J., concur.