# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Joseph Construction Co. v. Board of Trustees of Governors State University*,
**2012 IL App (3d) 110379**

---

| | |
|---|---|
| Appellate Court Caption | JOSEPH CONSTRUCTION COMPANY, Plaintiff-Appellant, v. THE BOARD OF TRUSTEES OF GOVERNORS STATE UNIVERSITY and TRACY M. SULLIVAN, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-11-0379 |
| Rule 23 Order filed<br>Motion to publish allowed<br>Opinion filed | June 19, 2012<br><br>July 20, 2012<br>July 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff construction company's action against defendant state university to recover the balance due on a contract for renovation work at the university was based on a breach of the contract, regardless of plaintiff's "artful pleading" which sought injunctive and declaratory relief, and sovereign immunity applied because defendant was an arm of the State, the "prospective injunctive relief exception" to sovereign immunity did not apply, and the action had to be litigated in the Court of Claims. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 10-CH-3677; the Hon. Barbara Petrungaro, Judge, presiding |
| Judgment | Affirmed. |

| Counsel on Appeal | John R. O'Brien (argued), of Chicago, for appellant. |
|---|---|
| | Lisa Madigan, Attorney General, of Chicago (Alexis A. Widlak and Clifford W. Berlow (argued), Assistant Attorneys General, of counsel), for appellees. |
| Panel | PRESIDING JUSTICE SCHMIDT delivered the judgment of the court, with opinion. Justices Lytton and O'Brien concurred in the judgment and opinion. |

## OPINION

¶ 1      This dispute involves work performed by plaintiff, Joseph Construction Company, for Governors State University. Plaintiff filed this action against defendants, the Board of Trustees of Governors State University (Governors State or GSU) and Tracy Sullivan, seeking, *inter alia*, to recover the balance allegedly due under a construction contract. Defendants brought a motion to dismiss plaintiff's complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-619 (West 2010)). The trial court granted defendants' motion, leading plaintiff to file a motion to reconsider as well as a motion to amend its complaint. The trial court denied both motions and this appeal followed. Plaintiff claims the trial court erred in finding that plaintiff must prosecute its claims in the Court of Claims. We affirm.

¶ 2                              BACKGROUND

¶ 3      Our recitation of the substantive facts of this matter, as with any case dismissed pursuant to section 2-619 of the Code, is almost entirely constrained to those facts contained within the complaint. On June 17, 2010, plaintiff filed a complaint alleging it is in the general construction business. Defendant Tracy Sullivan was an agent of Governors State whose duties included executing agreements for construction work.

¶ 4      On November 1, 2007, plaintiff entered into a written contract with Governors State, executed by Sullivan, for the performance of renovation work at GSU. In accordance with the terms of the contract, GSU issued its purchase order to plaintiff, directing plaintiff to proceed with work identified by the contract. Plaintiff alleges that on or about April of 2008, it had substantially completed all work required by the contract to the value of $1,564,231. The work included installation of a new wall and floor tile in the men's and women's shower rooms adjacent to the GSU swimming pool.

¶ 5      Plaintiff alleged that the scope of the work did not include demolition, modification or replacement of the existing subfloor, but merely the removal of the prior floor tile and the

installation of new tile. Governors State informed plaintiff, after plaintiff completed its work, that certain areas within the shower rooms were experiencing puddling or pooling of water. Plaintiff claims to have performed requested remedial work, to the extent practicable, in a good and workmanlike manner.

¶ 6 Pursuant to the contract, in April of 2009, a nine-month inspection was conducted in an attempt to identify any items of warranty work that needed to be corrected. Following the inspection, additional corrective work was requested by GSU to address small areas of pooling water. Plaintiff agreed to perform, to the extent feasible, the corrective work.

¶ 7 On September 14, 2009, plaintiff submitted its request for final payment of the balance due under the contract. Defendant responded by sending a letter from Sullivan dated September 22, 2009, expressing an intent to withhold $49,000 from the final payment, purportedly to correct defective installation of the floor tile.

¶ 8 Plaintiff alleges that Sullivan's actions were "outside the scope of her authority as a State Official, as she is required, in her capacity as a procurement officer, to honor the terms of the parties' agreement, and not capriciously and arbitrarily withhold funds owed." The complaint states that GSU and Sullivan have failed and refused to make any effort to resolve this dispute and have ignored repeated requests to specify any additional corrective work which may be feasible.

¶ 9 Plaintiff alleged that the act of withholding funds amounted to conversion and further that it would be irreparably harmed if defendants were allowed to "continue to refuse payment of money owed *** and/or convert it to some other use, including destruction of [its] work." Plaintiff claimed to have no adequate legal remedy to prevent such harm in that it would be unable to prove its claim in any venue should defendants destroy or cause the destruction of its work. Finally, plaintiff alleged that since GSU continued to enjoy the benefit of its work, GSU and Sullivan would suffer no harm if the relief it requested was granted, especially given the fact that plaintiff "already has a performance and payment bond issued in connection with the construction contract" for the project.

¶ 10 Plaintiff requested that the trial court grant a preliminary and permanent injunction: (1) preventing defendants from destroying or contracting with others to destroy the tile work it installed; (2) ordering defendants to stop wrongfully withholding funds owed to it; and (3) without requiring it to post any additional bond. Plaintiff's complaint further sought a declaration that it was not in violation of the contract with GSU and that GSU, in fact, breached the contract. Finally, plaintiff included a breach of contract count in its complaint in which it sought to recover $75,673 in damages plus prejudgment interest.

¶ 11 Plaintiff attached a copy of the construction contract to the complaint. The contract contains a clause titled "Governing Law" that states "any claims brought against [GSU] must be brought in the Illinois Court of Claims in accordance with the Illinois Court of Claims Act (705 ILCS 505)."

¶ 12 Defendants filed a motion to dismiss pursuant to section 2-619 of the Code. 735 ILCS 5/2-619 (West 2010). In their motion, defendants state that plaintiff's claims were barred by sovereign immunity as "GSU is a statutorily-created university of the State of Illinois." As such, and given the nature of Sullivan's employment at the university, defendants argued that

the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2010)) and the Court of Claims Act (705 ILCS 505/8 (West 2010)) precluded any redress sought against defendants in the circuit court of Will County. Defendants also noted that the contract itself indicates that all claims brought thereunder must be initiated in the Illinois Court of Claims.

¶ 13      Plaintiff filed a response to defendants' motion averring, *inter alia*, that the contractual provision mandating claims be brought in the Illinois Court of Claims "has no bearing on this action" and that neither the Court of Claims Act (705 ILCS 505/8 (West 2010)) nor the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2010)) barred prosecution of this matter in the circuit court. Defendants replied and the matter proceeded to a hearing on December 3, 2010.

¶ 14      On January 10, 2011, the trial court issued a written order granting defendants' motion to dismiss. On January 26, 2011, plaintiff filed a motion for leave to file an amended complaint, which included a copy of the proposed amended complaint. Rather than immediately ruling on the motion for leave to amend, the trial court entered a scheduling order. The scheduling order: (1) granted plaintiff "leave to file a separate motion to reconsider by February 4, 2011"; (2) gave defendants until February 25, 2011, to file a response to plaintiff's motion; (3) gave plaintiff until March 18, 2011, to file a reply to defendants' response; and (4) set the matter for a hearing on April 1, 2011.

¶ 15      The hearing on both plaintiff's motion for leave to amend its complaint and on its motion to reconsider took place as scheduled. Thereafter, the trial court entered an order denying plaintiff's motion to reconsider on May 4, 2011. By separate order dated June 1, 2011, the trial court denied plaintiff's motion for leave to file an amended complaint. Plaintiff filed a timely notice of appeal.

¶ 16                             ANALYSIS

¶ 17      We review *de novo* the circuit court's decision granting defendants' motion to dismiss under section 2-619 of the Code. *Cortright v. Doyle*, 386 Ill. App. 3d 895, 899 (2008). A section 2-619 motion for involuntary dismissal asserts affirmative matters such as defenses of preemption, sovereign immunity and absolute immunity which avoid or defeat a claim. *Id.*; see also *Wolfe v. Wolf*, 375 Ill. App. 3d 702, 705 (2007). When reviewing a section 2-619 dismissal, we construe all pleadings and supporting documents in a light most favorable to the plaintiff. *Cortright*, 386 Ill. App. 3d at 899.

¶ 18      While plaintiff breaks its claim into numerous subcategories, it basically makes three claims of error. First, plaintiff claims the trial court erred in holding that the contractual provision stated above is a valid and enforceable forum selection clause mandating that all actions on the contract originate in the Court of Claims. Second, plaintiff argues that its claims for injunctive and declaratory relief are not subject to the jurisdiction of the Court of Claims or barred by principles of sovereign immunity. Somewhat bootstrapped to this argument is plaintiff's claim that the circuit court has jurisdiction over contract claims against GSU. Finally, plaintiff argues that the trial court erred in denying its motion for leave to amend his complaint.

¶ 19                                    I. Forum Selection Clause

¶ 20        Plaintiff argues that the "parties' contract does not confer jurisdiction of Joseph's claims for injunctive and declaratory relief upon the Court of Claims." As such, plaintiff claims that trial court erred in holding the contractual provision titled "Governing Law" was a valid and enforceable forum selection clause. This provision states:

> "GOVERNING LAW: Notwithstanding anything in the Contract or purchase order to the contrary, this Contract shall be governed by the laws of the State of Illinois without reference to conflict of laws principles. The parties acknowledged that GSU is a State entity and as such any claims brought against it must be brought in the Illinois Court of Claims in accordance with the Illinois Court of Claims Act (705 ILCS 505)."

¶ 21        Defendants argue the trial court was correct in holding the contract contains a valid and enforceable forum selection clause. They do not directly respond to plaintiff's assertion that two private parties cannot confer jurisdiction on a court where the legislature has limited it. Instead, defendants analyze the issue by citing to hornbook case law regarding the enforceability of forum selections clauses: that being, that courts look to "(1) the law that governs the formation and construction of the contract; (2) the residency of the parties; (3) the place of execution and/or performance of the contract; (4) the location of the parties and their witnesses; (5) the inconvenience to the parties of any particular location; and (6) whether the clause was equally bargained for." *IFC Credit Corp. v. Rieker Shoe Corp.*, 378 Ill. App. 3d 77, 86 (2007). To be fair to the defendants, in other parts of their brief, they argue that the Court of Claims' authority to decide this matter is premised on the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2010)) as well as the Court of Claims Act (705 ILCS 505/8 (West 2010)).

¶ 22        While referring to the "Governing Law" clause reproduced above, the trial court specifically held "the forum selection clause will be upheld" when disposing of plaintiff's count for breach of contract. Plaintiff specifically argues that, while "parties to a contract are generally free to choose the forum in which disputes arising thereunder will be litigated, courts have only that jurisdiction which is conferred upon them either by legislation, or by the state constitution." We agree.

¶ 23        Plaintiff and defendants could no more confer jurisdiction on the Illinois Court of Claims via contract or agreement than they could confer jurisdiction on this court by agreeing to litigate all matters here. "When a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction and the court must proceed within the strictures of the statute ***." (Internal quotation marks omitted.) *In re A.H.*, 195 Ill. 2d 408, 416 (2001) (quoting *In re M.M.*, 156 Ill. 2d 53, 66 (1993)).

¶ 24        We hold the trial court erred when finding the contract contained an enforceable "forum selection clause." This error, however, does not end our analysis as defendants sought dismissal of plaintiff's complaint on numerous other grounds. We still must analyze defendants' claims that principles of sovereign immunity and the Court of Claims Act bar plaintiff's action.

II. Sovereign Immunity/Court of Claims Act

¶ 26 Sovereign immunity in Illinois exists pursuant to statute and mandates that the State or any department of the State cannot be sued in the circuit court or any other court without the State's consent. *Association of Mid-Continent Universities v. Board of Trustees of Northeastern Illinois University*, 308 Ill. App. 3d 950, 952 (1999). Our legislature enacted the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2010)), which provides that the State shall not be made a defendant or party in any court except as provided in the Court of Claims Act (705 ILCS 505/1 (West 2010)). *Id.*

¶ 27 The general rule that an agency of the State may not be a defendant in a circuit court action, as State agencies are considered to be arms of the State itself, is not absolute. *Williams v. Davet*, 345 Ill. App. 3d 595, 599 (2003). "[T]he determination that a claim is one against the State does not depend upon the State agency being named as a party. [Citation.] The determination depends instead on the issues involved and the relief sought." (Internal quotation marks omitted.) *Rockford Memorial Hospital v. Department of Human Rights*, 272 Ill. App. 3d 751, 756-57 (1995). "[I]n determining whether sovereign immunity applies to a particular case, substance takes precedent over form." *Id.* at 757.

¶ 28 Sovereign immunity exists only if the defendant is an arm of the State, the plaintiff's action constitutes a present claim that could subject the State to liability and no exception exists. *C.J. v. Department of Human Services*, 331 Ill. App. 3d 871, 876-77 (2002). The Court of Claims Act provides that the Court of Claims has exclusive jurisdiction to hear certain matters, including "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit" (705 ILCS 505/8(d) (West 2010)) as well as all "claims against the State founded upon any contract entered into with the State of Illinois" (705 ILCS 505/8(b) (West 2010)).

¶ 29 The gravamen of plaintiff's arguments regarding why neither principles of sovereign immunity nor the Court of Claims Act bar this action is twofold. First, plaintiff suggests that GSU is not the "State." As such, neither principles of sovereign immunity, the Court of Claims Act (705 ILCS 505/1 (West 2010)) nor the State Lawsuit Immunity Act (745 ILCS 5/1.5 (West 2010)) bars this action. Second, should we find that GSU is "the State," plaintiff submits that the circuit court is the proper venue to resolve the specific claims it has made against GSU. Accordingly, we begin our analysis by determining whether GSU is, in fact, the State for purposes of this lawsuit.

¶ 30 A. Is GSU the State?

¶ 31 In a word: yes.

¶ 32 Plaintiff acknowledges the significant body of law which holds, for the purposes of the State Lawsuit Immunity Act and Court of Claims Act, that our public universities are "the State." See *Ellis v. Board of Governors of State Colleges & Universities*, 102 Ill. 2d 387 (1984); *Management Ass'n of Illinois, Inc. v. Board of Regents of Northern Illinois University*, 248 Ill. App. 3d 599 (1993); *Peters v. Board of Trustees of Southern Illinois University*, 351 Ill. App. 3d 1143 (2004); *Association of Mid-Continent Universities v. Board of Trustees of Northeastern Illinois University*, 308 Ill. App. 3d 950 (1999); *Williams v.*

*Medical Center Comm'n*, 60 Ill. 2d 389, 393-94 (1975); *Hoffman v. Yack*, 57 Ill. App. 3d 744 (1978). Nevertheless, plaintiff poses a number of theories why, for the purposes of this action, GSU is not the State. The path taken by plaintiff to arrive at this conclusion passes through a number of legislative enactments. Plaintiff's argument is based, in part, on GSU's enabling statute and, in part, on language of the Court of Claims Act.

¶ 33    Plaintiff notes that our legislature reorganized certain public universities through Public Act 89-4, effective January 1, 1996. That act effectively dissolved the Board of Governors of State Colleges and Universities, which governed GSU and other state universities. The act also created acts that are compiled in chapter 110 of the Illinois Compiled Statutes. These acts are the current enabling statutes for numerous universities like GSU (110 ILCS 670/15-1 *et seq*. (West 2010)) and Northeastern Illinois University (110 ILCS 680/25-1 *et seq*. (West 2010)) to name just two.

¶ 34    Analyzing GSU's enabling statute, plaintiff notes that section 15-40 of the Governors State University Law allows GSU to "enter into contracts and to sue and be sued." 110 ILCS 670/15-40 (West 2010). Moreover, section 15-10 of the Governors State University Law "created a body politic and corporate which shall be styled the Board of Trustees of Governors State University." 110 ILCS 670/15-10 (West 2010).

¶ 35    Plaintiff further notes that section 8(d) of the Court of Claims Act states that the Court of Claims "shall have exclusive jurisdiction to hear *** (d) All claims against the State for damages in cases sounding in tort *** and all like claims sounding in tort against *** the Board of Trustees of Governors State University." 705 ILCS 505/8(d) (West 2010). However, section 8(b) of the Court of Claims Act merely confers jurisdiction to the Court of Claims for all "claims against the State founded upon any contract entered into with the State of Illinois." 705 ILCS 505/8(b) (West 2010). Plaintiff draws specific attention to the fact that section 8(b) refers only to the State of Illinois and does not identify GSU or any individual arm of the State.

¶ 36    With those statutes as a backdrop, plaintiff asserts that once Public Act 89-4 became effective, "GSU, along with all of the other state universities that had previously operated under the auspices of the Board of Governors of State Universities, *** became financially independent entities, bodies politic and corporate with the power to sue and be sued, except that tort claims against each of them must be brought in the Court of Claims." Plaintiff questions why, if this language in GSU's enabling statute fails to create an entity separate from the State, did the legislature feel it necessary in section 8(d) of the Court of Claims Act to confer exclusive jurisdiction for both "claims against the State" and "the Board of Trustees of Governors State University" when tort suits are brought?

¶ 37    Ultimately, plaintiff submits that the language in GSU's enabling statute, coupled with the fact that the Court of Claims Act references both "the State" and GSU in section 8(d) but only "the State" in section 8(b), leads to the inescapable conclusion that GSU is not "the State" within the meaning of the Court of Claims Act prohibition against bringing breach of contract claims in the circuit courts. We disagree and find that GSU is an arm of the State of Illinois.

¶ 38    Plaintiff's arguments are a new version of one previously rejected, albeit before Public

Act 89-4 became effective. In *Raymond v. Goetz*, the plaintiff filed a breach of contract action. *Raymond v. Goetz*, 262 Ill. App. 3d 597 (1994). The University of Illinois filed a motion to dismiss alleging the circuit court lacked subject-matter jurisdiction to hear any contract claim against the University. *Id.* at 598. The *Raymond* court summarized the plaintiff's claims as follows:

> "Raymond first contends one need only look to the enabling legislation to determine whether an action may be brought against the entity in the circuit court. Since the University's enabling legislation provides the University is empowered to contract and to sue and be sued, provided that *tort* claims against the University be brought in the Court of Claims [citation], Raymond contends that by implication *contract* claims against the University need not be brought in the Court of Claims but may be brought in the circuit court." (Emphasis in original.) *Raymond*, 262 Ill. App. 3d at 600.

¶ 39    The enabling statute at issue in *Raymond* stated that the University of Illinois "shall be a body corporate and politic [and] *** have power to contract and be contracted with, to sue and be sued, provided that any suit against the Board based upon a claim sounding in tort must be filed in the Court of Claims." Ill. Rev. Stat. 1991, ch. 144, ¶ 22; *Raymond*, 262 Ill. App. 3d at 600. Similarly, the language herein which plaintiff claims renders GSU as something other than an arm of the State comes from its enabling statutes which state that there "is hereby created a body politic and corporate which shall be styled the Board of Trustees of Governors State University" (110 ILCS 670/15-10 (West 2010)) which "shall have power to enter into contracts and to sue and be sued, provided that any suit against the Board based upon a claim sounding in tort must be filed in the Court of Claims" (110 ILCS 670/15-40 (West 2010)).

¶ 40    The *Raymond* court noted that numerous courts, including our supreme court in *Ellis v. Board of Governors of State Colleges & Universities*, 102 Ill. 2d 387 (1984), previously rejected arguments suggesting "a distinction ought be made between tort and contract actions filed against State colleges and universities based upon the language of their enabling statutes and the Court of Claims Act." *Raymond*, 262 Ill. App. 3d at 602. The *Raymond* court relied heavily on our supreme court's decision in *Ellis*. The *Ellis* court stated, "It is clear that since we have decided that the Board is an arm of the State and must be sued in the Court of Claims, whether the plaintiff's cause of action sounds in tort, or in contract ***, the Court of Claims has exclusive jurisdiction." *Ellis*, 102 Ill. 2d at 394-95.

¶ 41    *Ellis*, *Raymond* and their progeny clearly hold that our state colleges and universities are "the State" for purposes of sovereign immunity and must be sued in the Court of Claims despite the fact that their enabling legislation says they have the power to contract, sue and be sued. We acknowledge that Public Act 89-4 dissolved the Board of Governors of State Universities and created a number of individual governing bodies and that those governing bodies may have slightly different authority and autonomy than did the Board of Governors of State Universities. Nevertheless, we find nothing in Public Act 89-4 which renders GSU anything other than an arm of the State or that renders the holdings of *Ellis* or *Raymond* inapplicable to GSU. Moreover, as stated by the Fifth District in *Peters v. Board of Trustees of Southern Illinois University*, 351 Ill. App. 3d 1143 (2004), a post-Public Act 89-4 case, "There are numerous decisions finding that a state university and its board of trustees are

arms of the State." *Id.* at 1146 (citing *Williams*, 60 Ill. 2d at 393-94); *Ellis*, 102 Ill. 2d at 393; *Hoffman v. Yack*, 57 Ill. App. 3d 744 (1978).

¶ 42                                    B. Proper Venue for Claims Made Against GSU

¶ 43        Having found that GSU is an arm of the State, we must determine whether the specific claims against GSU can be brought in the circuit court. We hold they cannot.

¶ 44        Plaintiff acknowledges, in its reply brief, that determining whether GSU is an arm of the State would bring "us to the central issue in this case, *** whether the Illinois Court of Claims has exclusive jurisdiction over a breach-of-contract claim against a state university." While the plaintiff qualifies that statement with the suffix "after the enactment of P.A. 89-4," as noted above, we find nothing in Public Act 89-4 that changes the applicability of principles of sovereign immunity or its application to our state universities and colleges.

¶ 45        We hold the Court of Claims has exclusive jurisdiction over this breach of contract action against GSU. Again, the *Ellis* court stated, "It is clear that since we have decided that the Board is an arm of the State and must be sued in the Court of Claims, whether the plaintiff's cause of action sounds in tort, or in contract ***, the Court of Claims has exclusive jurisdiction." *Ellis*, 102 Ill. 2d at 394-95.

¶ 46        Plaintiff notes, however, that count I and count II of its complaint were not contract claims but, instead, equitable claims seeking injunctive and declaratory relief. The trial court found these claims did nothing more than restate a breach of contract claim. We agree.

¶ 47        Count I of plaintiff's complaint claims plaintiff performed all work "in accordance with contract specifications" and that plaintiff "submitted its request for final payment of the balance due to it under the terms of the aforementioned Construction Contract, a true and correct copy of which is attached hereto." Plaintiff further alleged defendant Sullivan acted "outside the scope of her authority" by failing "to honor the terms of the parties' agreement" and by "capriciously and arbitrarily withhold[ing] funds owed." Therefore, plaintiff requested the court enter an order, *inter alia*, prohibiting defendants from "withholding funds from [plaintiff's] final payment. Count II of the complaint, titled "Declaratory Judgment," asked the court to declare that plaintiff "has performed its contract with GSU as aforesaid, that GSU is in breach thereof, and that [plaintiff] is entitled to the balance due under the terms of the parties' agreement."

¶ 48        Courts have disfavored the use of "artful pleading" to "disguise plaintiff's endeavors" (*Village of McCook v. Illinois Bell Telephone Co.*, 335 Ill. App. 3d 32, 39 (2002)) which are "designed to cloak the cause in the attire of equity" (*Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 282 (2001)). Other courts have found that when "the gravamen of the complaint is breach of contract," a "prayer for injunctive relief" is " 'nothing more than a thinly disguised breach of contract action.' " *Northrop Corp. v. AIL Systems, Inc.*, 218 Ill. App. 3d 951, 954-55 (1991); see also *Franz v. Calaco Development Corp.*, 322 Ill. App. 3d 941 (2001).

¶ 49        Similarly, we find as did the trial court that the plaintiff's counts seeking injunctive and declaratory relief do nothing more than restate its breach of contract claim. The prayer in the first count asks for the court to prohibit defendant from "wrongfully withholding funds from"

plaintiff. The declaratory count seeks a declaration that "GSU is in breach" of the contract and that plaintiff "is entitled to the balance due under the terms of the parties' agreement."

¶ 50 This entire action is premised and founded upon the construction contract between plaintiff and GSU. As GSU is an arm of the State, this breach of contract action must be litigated in the Court of Claims. 705 ILCS 505/8(b) (West 2010). Again, when determining whether sovereign immunity applies to a particular case, "substance takes precedent over form." *Rockford Memorial Hospital*, 272 Ill. App. 3d at 757. The substance of plaintiff's claim is nothing more than a breach of contract action.

¶ 51 Finally, we acknowledge the "prospective injunctive relief exception" to the doctrine of sovereign immunity. This exception, however, is only properly "invoked where a plaintiff seeks to enjoin a State agency or official from taking actions in excess of his statutory or constitutional authority." *Rockford Memorial Hospital*, 272 Ill. App. 3d at 755; see also *Landfill, Inc. v. Pollution Control Board*, 74 Ill. 2d 541, 552 (1978). The "actions in excess of" defendant's statutory authority identified by plaintiff in this case involve defendant Sullivan paying another contractor money that plaintiff believes it is entitled to under the construction contract.

¶ 52 Again, artful pleadings can allow any plaintiff to suggest that a state employee acts outside the scope of his or her employment when disbursing funds to which the plaintiff feels entitled. Such skilled pleadings, however, are simply not sufficient to defeat the Court of Claims' jurisdiction. "When the state employee allegedly breaches a duty that arises solely by virtue of his state employment, sovereign immunity will bar in circuit court an action that is founded on that breach." *Brandon v. Bonell*, 368 Ill. App. 3d 492, 505 (2006) (citing *Currie v. Lao*, 148 Ill. 2d 151, 159 (1992)). Sullivan's "duty" to disburse funds associated with this construction project clearly arises "solely by virtue" of her state employment. We find the prospective injunctive relief exception to the doctrine of sovereign immunity does not confer jurisdiction on the circuit court even though plaintiff alleged Sullivan would be acting outside the scope of her duties if she were allowed to disburse funds to another contractor.

¶ 53                            III. Leave to Amend

¶ 54 Plaintiff argues the trial court erred in denying its request to amend its complaint. Plaintiff further claims that we should review the matter *de novo* as "the trial court's order denying Plaintiff's Motion for Leave to File an Amended Complaint contains no explanation thereof whatsoever." Plaintiff cites no authority to support its contention that our review is *de novo* when the trial court fails to indicate in the written order why it denied plaintiff's motion for leave to amend. Moreover, plaintiff has failed to produce transcripts from any of the hearings below, rendering the record on appeal less than complete despite the fact that plaintiff's motions were argued during at least two hearings.

¶ 55 In *Kolacki v. Verink*, 384 Ill. App. 3d 674 (2008), this court recited well-settled principles of law which hold "[t]rial courts are encouraged to freely and liberally allow a party to amend the pleadings. 735 ILCS 5/2-616 (West 2006); [citation]. A party's right to amend, however, is not absolute or unlimited. [Citation.] The test is whether allowing the amendment would

further the ends of justice. [Citation.] In determining whether to allow a party to amend a pleading, a trial court should consider the following factors: whether the amendment would cure a defect in the pleadings; whether the other party would be prejudiced or surprised by the proposed amendment; whether the proposed amendment is timely; and whether there were previous opportunities to amend the pleadings. [Citation.] A trial court has broad discretion in ruling upon a motion for leave to amend the pleadings and its decision in that regard will not be reversed on appeal absent an abuse of discretion. [Citation.]" *Id.* at 680-81.

¶ 56        Attached to plaintiff's motion for leave to amend is a copy of the proposed amended complaint. The amended complaint contained similar allegations and counts as the original, merely amending the prayer for injunctive and declaratory relief. Plaintiff claims its proposed amendments cured any potential defects as it removed its prayer for an order prohibiting defendants from "wrongfully withholding funds" and merely "sought to maintain the status quo." The proposed amended complaint retained the request for a preliminary injunction preventing defendants from destroying or contracting with other parties to destroy plaintiff's work. It removed the request to prohibit defendants from "wrongfully withholding funds from plaintiff" to one seeking to prevent GSU "from utilizing funds allocated to the contract with [plaintiff] to have work performed by others." Similarly, the amended claim for declaratory relief replaces a request for a judgment "establishing that [plaintiff] has performed its contract with GSU ***, that GSU is in breach thereof, and that [plaintiff] is entitled to the balance due under the terms of the parties' agreement" with a request for declaration "establishing that [plaintiff] has substantially performed its contract with GSU as aforesaid, that GSU may not withhold, or attempt to spend, $49,000 on the basis of the alleged defects in the shower room floors, and that GSU may not take any further corrective action without first advising [plaintiff] of some feasible corrective action that GSU believes is within the scope of the parties' agreement, affording [plaintiff] a reasonable opportunity to perform same."

¶ 57        Defendants argue that the denial of plaintiff's motion for leave to amend was proper as this matter, at its essence, is a contract dispute. Defendants characterize the amended complaint as another artful pleading through which plaintiff attempts to obtain money damages resulting from an alleged breach of contract by equitable means. The trial court agreed with defendants' characterization and so do we. Plaintiff's amendments do not change the nature of this action which, at its heart, is a contract dispute that must be brought in the Court of Claims. As the proposed amendments did not "cure" the defects in plaintiff's complaint, we hold the trial court did not abuse its discretion when denying plaintiff's motion for leave to file an amended complaint. Again, when determining whether sovereign immunity applies to a particular case, "substance takes precedent over form." *Rockford Memorial Hospital*, 272 Ill. App. 3d at 757.

¶ 58                                                          CONCLUSION

¶ 59        For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

¶ 60        Affirmed.